# EMMA RADWICK, ADMINISTRATRIX, *vs.* ISRAEL GOLDSTEIN.

Third Judicial District, New Haven, June Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Questions whose determination involves weighing conflicting evidence and passing upon the credibility of witnesses, are distinctly and peculiarly within the province of the jury.

A trial court is under no duty at any time to charge in the language of the requests. Its duty is discharged by giving the jury such instructions as may be required for a clear understanding of the issues raised by the pleadings and evidence, and such as are adequate for their determination.

Requests to charge which partake more of the character of an argument than of a judicial utterance intended to enlighten the jury, are very properly denied.

Extracts from opinions of this court are seldom adapted for use in instructing a jury, who are concerned not with general principles but with the specific situation before them and with the law applicable to the facts of that particular case.

While our statute (Public Acts of 1911, Chap. 85, § 13) makes a rate of speed in excess of twenty-five miles an hour by motor-vehicles prima facie evidence of negligent and improper driving, it does not forbid such speed nor make the operator an insurer against all mishaps which may arise in the course of such operation; and this prima facie evidence may always be overcome by proof to the contrary.

The fact that the defendant driver of a motor-vehicle ran by a standing street-railway car at a greater speed than three miles an hour, is of no consequence, in the absence of evidence tending to establish a causal connection between such rate of speed while passing the car and the injury to the plaintiff's intestate, a bicycle traveler on the highway, at a point some distance further on.

Instructions should be limited to such matters as may be material to the determination of the issues upon the facts as they may reasonably be found by the jury.

A plaintiff who has been negligent may recover only when his negligence did not contribute to produce the resulting injury.

Concurrent negligence of each party which is so related to the resulting injury as to be regarded an efficient or proximate cause of it, will preclude a recovery by the plaintiff.

The so-called rule of the "last clear chance" applies only where it is

open to the jury, acting reasonably upon the evidence and claims of the parties, to find that the plaintiff's negligence was not, and that the defendant's negligence was, the proximate cause of the injury; and therefore there is no opportunity to apply the rule if the jury, as in the present case, are bound to find that one or the other of the parties was free from any negligence.

An instruction that a plaintiff who has failed in his own duty cannot recover "unless the defendant, after he saw the plaintiff's danger, might, by the use of reasonable care, have avoided the collision," states the rule of last clear chance in a manner too favorable to the plaintiff.

A bicycle traveler in the highway is bound to be watchful in the direction in which he is going, is bound to make reasonable use of his senses, to have reasonable control of his wheel, to ride at a reasonable rate of speed under the circumstances, and, in general, to exercise ordinary care both in the avoidance of dangers known to him and in the discovery of dangers or conditions of danger to which he may become exposed; and a charge to that effect states nothing novel or improper.

Argued June 8th—decided July 27th, 1916.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and tried to the jury before *Reed, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

North Main Street is one of the principal streets in the borough of Naugatuck, and runs in a general northerly and southerly direction. It is forty feet in width, with a seven foot sidewalk on its westerly side. Upon its easterly side there is no sidewalk. On that side of the street for some distance are double tracks of a trolley turnout occupying about fourteen feet of its easternmost portion. The rails are laid flush with the highway surface, and the portion of the street occupied by the turnout forms a part of the traveled way. The westerly side of the street, free from tracks, is about twenty-five feet wide. About one hundred and fifty feet south of the northerly end of this turnout is a regular stopping place for the trolley-cars, indicated

by a white pole, and passengers alight from and board the cars at this point. Southbound cars use the westerly tracks of the turnout.

At a point in the highway some one hundred feet or more north of the pole, the plaintiff's intestate, while riding a bicycle, came into collision with an automobile driven by the defendant, and received injuries which resulted in his death. The circumstances attending this collision were in dispute at the trial.

The plaintiff offered evidence to prove, and claimed to have proved, that just prior to and at the time of its occurrence, which was in the day time, the deceased was proceeding northerly on his wheel; that at the white pole he passed, at a speed of from five to ten miles an hour, a southbound trolley-car standing there to allow passengers to get off and on; that he passed some six or eight feet to the west of the car, and proceeded straight on some one hundred feet when the defendant, coming from behind at the rate of from twenty-five to thirty miles an hour, and unobserved and without warning, ran into the rear of his bicycle. She claims to have proved that the defendant passed the street-car at the rate of from twenty-five to thirty miles an hour; that, although he saw the intestate, or might have seen him had he made proper use of his senses, since there were no teams or other obstructions to his clear view of the highway, he did nothing to slacken his speed or change his course so as to pass around the intestate, as he might readily have done, or do anything to avoid a collision.

The defendant, on the other hand, offered evidence to prove, and claimed to have proved, that as he was traveling northerly at the rate of from ten to fifteen miles an hour, he met the trolley-car, then in motion, going south on the turnout; that after he had passed the car he slightly increased his speed, which he had

somewhat slackened as he approached it, and proceeded straight ahead until he was about one hundred feet north of the white pole when he first saw the intestate on a bicycle about two feet from the westerly curb traveling slowly toward the north; that he thereupon sounded his horn to give warning of his approach; that his car was proceeding about fourteen feet from the westerly curb, and straight ahead, when the intestate suddenly, without warning and without apparent reason, turned to the right in front of the defendant's automobile, striking the left front corner of the left front fender with the front of his bicycle, throwing both it and its rider to the ground and causing the latter's injuries; that as soon as the intestate thus changed his course the defendant again sounded his horn, shouted, set his brakes and did all that he possibly could to avoid the collision, which he claims to have shown was caused by the deceased's sudden change of course without warning and without giving the defendant an opportunity to prevent its occurrence.

The witnesses were in agreement in saying that the highway, at the place of the accident, was clear of vehicles, and that there was nothing to interfere with a traveler's clear view of his surroundings or with his freedom of movement within its limits.

The complaint charged that the defendant was negligent (1) in operating his car "recklessly and at a rate of speed greater than was reasonable and proper, having regard to the width, traffic and use of said North Main Street," and (2) in operating his car "at a rate of speed greater than was reasonable and proper in passing a street-railway car which was about to stop, on the same side of the car on which passengers are ordinarily received and discharged."

Touching the matter of the defendant's rate of speed and the bearing and effect of statutory regulations

upon that subject, the court read to the jury § 11 and the pertinent portions of §§ 12 and 13 of chapter 85 of the Public Acts of 1911, as amended by chapter 204 of the Public Acts of 1913, and in the course of his comments upon them used the following language: "Under these statutes if you find that the rate of speed of the defendant at the time of the accident exceeded twenty-five miles an hour for one-eighth of a mile, then, as the statute says, that will be *prima facie* evidence that his speed was greater than was reasonable and proper, and in that case the burden would be on the defendant to show that such speed was reasonable and proper under the circumstances. You will see by this that the effect of this statute making the excess of speed above twenty-five miles an hour *prima facie* evidence of an unreasonable or improper speed, does not necessarily mean that the defendant is liable in this action, or that he was guilty of negligence in passing the car at the rate of speed that he did, if that was in excess of twenty-five miles an hour, but it casts upon the defendant the burden of proving such speed to be reasonable and proper. Of course, if his speed did not exceed twenty-five miles an hour, the statute does not apply at all. If it did exceed that rate at the time of the accident, you will have to find the speed unreasonable, unless the defendant proves by a fair preponderance of the evidence that the speed was not unreasonable under the circumstances."

*Edward F. Cole* and *Clayton L. Klein,* for the appellant (plaintiff).

*Arthur B. O'Keefe,* with whom was *David E. Fitz-Gerald,* for the appellee (defendant).

PRENTICE, C. J. The reasons of appeal assign as error the trial court's denial of the plaintiff's motion

to set aside the verdict and grant a new trial, its refusal to charge, as requested, in three particulars, and several portions of the charge as given.

Two radically variant versions of the circumstances leading up to and attending the accident, which befell the plaintiff's intestate, were given by the witnesses produced at the trial. The plaintiff introduced evidence in support of one which pointed unmistakably to negligence on the part of the defendant as its sole contributing cause. The defendant, on the other hand, presented evidence which, if found true, quite as unmistakably established that the accident occurred through the fault of the plaintiff's intestate and without fault on the part of the defendant. The decisive question for determination, therefore, was one as to which of these versions was the correct one. Its answer involved weighing conflicting evidence and passing upon the credibility of witnesses and testimony, and it was thus brought distinctly and peculiarly within the jury's province. An examination of the conflicting testimony satisfies us that its determination in favor of the defendant was not so unreasonable as to have justified the trial court in setting aside its verdict.

The requests to charge, which were not complied with, consisted of argumentative language taken from opinions of this court, and used in those opinions in the discussion of specific situations before the court, and the application of accepted general principles to them, and not in the statement of those principles. The court is under no duty at any time to charge in the language of requests. Its duty is performed when it gives instructions calculated to give the jury a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and suited to their guidance in the determination of those issues. *McGarry* v. *Healey*, 78 Conn. 365, 367, 62 Atl. 617.

Particularly is a court not called upon to, and should not, charge in the language of requests such as those under consideration, which partake more of the character of an argument to an end than of a judicial utterance intended to enlighten the jury by clear, concise and impartial language. *State* v. *Rathbun,* 74 Conn. 524, 528, 51 Atl. 540. Of extracts from opinions generally we said in *Allen* v. *Lyness,* 81 Conn. 626, 629, 71 Atl. 936, that it is seldom that they are adapted for use in instructing the jury, and that is emphatically true of the present. There is nothing of legal pertinence contained in the requests the court failed to give which was not adequately covered by the instructions given.

Complaints are made of the court's instructions touching the matter of the defendant's speed, and the bearing and effect of the provisions of statute concerning the speed of motor-vehicles found in chapter 85 of the Public Acts of 1911, as amended by chapter 204 of the Public Acts of 1913. As we understand the brief of counsel, these complaints are two in number. The first is, that the jury were told that the effect of the provision contained in the first sentence of § 13, regarding speed in excess of twenty-five miles an hour for one eighth of a mile, was to make such rate of speed, when established, prima facie evidence, and prima facie evidence only, of negligent and improper driving, which could be overcome by proof that it was reasonable and proper speed under the circumstances, and were not told that it was sufficient evidence to establish liability for consequent injuries whatever the circumstances might be shown to have been.

Clearly the statute did not either forbid a rate of speed in excess of twenty-five miles an hour, or make such speed conclusive evidence of negligent driving. Neither did it make a person operating a motor-vehicle in excess of that speed an insurer against all mishaps

which might arise in the course of such operation. It simply made the excess of speed prima facie evidence of unreasonable and improper driving, and prima facie evidence can always be overcome by proof to the contrary.

The second criticism of this portion of the charge is that it ignored and deprived the plaintiff of the benefit of the last sentence of § 13, where a rate of speed in excess of three miles an hour, when passing a street-railway car that is stationary or about to stop, on the same side of the car on which passengers are ordinarily received and discharged, is made prima facie evidence of improper operation in violation of § 11 of the Act. It is true that the court did in the passage referred to, and in its instructions throughout, practically ignore this provision of the statute beyond its reading, and that one of the allegations of negligence in the complaint charges negligence in respect to the matter covered by it; but there was nothing whatsoever in the evidence which tended to establish a causal connection between the rate of speed at which the trolley-car was passed and the accident which occurred shortly afterward. The intestate was a traveler on the highway, entirely independent of the car, and it entered in no way into the situation out of which the accident arose. Its presence was an incident wholly unrelated to the tragedy enacted in its vicinity, and the rate of speed at which it was passed by the defendant possessed no more significance than would the same rate of speed had the car not chanced to be there. Of whatever violation of law the defendant may have been guilty in going by the car, it could not be said upon the evidence that it contributed to the collision which followed, or that such collision was in any way due to the car's presence. That being the case, the plaintiff was not entitled to instructions involving the statutory provi-

sion in question, and was deprived of no benefit which was rightly hers by the court's failure to so instruct. Instructions should be confined not only to the issues, but to matters which may be material to the determination of those issues upon the facts as they reasonably may be found in view of the evidence. *Rosenstein* v. *Fair Haven & W. R. Co.*, 78 Conn. 29, 31, 60 Atl. 1061.

One of the reasons of appeal charges that the court erred in not giving the plaintiff the benefit of the so-called "last clear chance" rule, and another that it erred in omitting to instruct the jury that, even though the plaintiff's intestate was negligent, if the defendant, by having proper control of his automobile, might have avoided the collision, the plaintiff was entitled to recover. These two alleged errors are closely related, and may be considered together.

The court wisely refrained from giving the instruction whose omission is thus complained of. It would not have been a correct statement of the law, if given. It is not true that one whose negligence entered into the situation from which injury to him resulted, may under all conditions recover from another who, by the exercise of ordinary care, could have avoided the injury. Such a principle would cause havoc with the accepted doctrine of contributory negligence, and we have never given countenance to it. The contributory negligence doctrine remains with us undisturbed. Whenever there is concurrent negligence of the parties of such a character that the negligence of each is to be regarded as a proximate cause of the resulting injury, there can be no recovery. It is only when the negligence of the plaintiff is not to be regarded as a proximate cause that he is permitted to recover, and that is upon the ground that there is not on his part negligence contributing in any true sense to produce the resulting

injury. *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 116, 84 Atl. 301, 524.

In so far as the court's alleged error in failing to give instructions enabling the plaintiff to take advantage of the so-called "last clear chance" rule is concerned, it is to be noticed, first of all, that the circumstances shown in evidence, as claimed by either party, furnish no opportunity for its application. Upon the plaintiff's version of them there was no possibility of a reasonable finding of negligence on the part of the deceased, while upon the defendant's, the decedent's negligent conduct continued to the end, and was an efficient cause of the final catastrophe. *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 122, 84 Atl. 301, 524. No middle ground was reasonably open to the jury. Furthermore, it is not quite true that the court failed to charge upon this subject. Commenting upon the decedent's duty in self-protection, it told the jury that if he failed to observe the precautions specified as growing out of that duty, the plaintiff could not recover "unless the defendant, after he saw the intestate's danger, might, by the use of reasonable care, have avoided the collision." Here is a distinct recognition of the defendant's liability in the application of the so-called "last clear chance" rule, even more broadly stated than the rule justifies.

The court's instructions in respect to the decedent's duty as a traveler in the highway on a bicycle, and the test to be applied in judging whether or not it had been performed, are made the subject of several assignments of error. These instructions held him to the duty of being watchful in the direction in which he was going, of making reasonable use of his senses, of having reasonable control of his wheel, of riding at a reasonable rate of speed under the circumstances, and of exercising ordinary care both in the avoidance of dangers which were known to him and in the discovery of dangers or

conditions of danger to which he might become exposed. There was nothing novel or improper in this statement of familiar and oft repeated principles. *Fay v. Hartford & Springfield Street Ry. Co.*, 81 Conn. 330, 336, 71 Atl. 364; *Snow* v. *Coe Brass Mfg. Co.*, 80 Conn. 63, 70, 66 Atl. 881; *Metcalf* v. *Central Vermont Ry. Co.*, 78 Conn. 614, 621, 63 Atl. 663.

Other reasons of appeal of minor importance and not well taken do not call for discussion.

There is no error.

In this opinion the other judges concurred.