## STATE OF CONNECTICUT v. JAMES G. DALEY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. MV 11-3863

Argued March 29—decided July 12, 1963

*Irwin I. Krug,* of Willimantic, for the appellant (defendant).

*Philip M. Dwyer,* prosecuting attorney, for the appellee (state).

JACOBS, J.  In this appeal from a conviction of speeding, the sole question presented is whether the court erred as a matter of law in concluding upon all the evidence that the defendant was guilty of the crime charged beyond a reasonable doubt. The defendant has filed the evidence to support the assignment. Cir. Ct. Rule 7.31.1.  No finding was made since none was requested.  Cir. Ct. Rule 7.21.1.

Our own examination of the transcript of the evidence shows these facts: Route 6 in the town of Windham runs, generally, in a northerly and southerly direction.  The posted speed limit is forty-five miles an hour.  The Airport Restaurant, the starting point of the defendant's course of travel, is located on the westerly side of route 6.  On January 6, 1963, at about 1:15 a.m., the defendant backed his car out of the parking area of the Airport Restaurant directly across the southbound lane and partially into the northbound lane, where his car was stalled for about fifteen to twenty seconds. A northbound motorist observed the stalled car in his lane of travel and promptly applied his brakes to avoid a collision.  After the defendant started up his car again, he swung around into the southbound lane, backed again across the northbound lane and headed northerly in the northbound lane.  The motorist in the following car was about 100 feet behind the defendant's vehicle.  About 300 feet north of the Airport Restaurant, there is a curve in the highway, at which point the defendant's

car was temporarily out of view of the following car, but it reappeared into view at the top of a hill about half a mile away. As the defendant's car was proceeding along, it was observed swerving from lane to lane. It finally spun around and reversed its course of travel, laying down skid marks measuring 281 feet, bounced off a telephone pole located on the opposite side of the highway, and came to rest 31 feet south of the telephone pole, facing southerly in the southbound lane. The force of the impact caused the fuel tank to be severed from the vehicle, and the tank was found embedded in the base of the telephone pole. The frame, rear bumper and trunk were pushed in against the rear window.

"The speed of an automobile is not, strictly speaking, a scientific inquiry." 5 Berry, Automobiles (7th Ed.) § 5.274; see *Porcello* v. *Finnan,* 113 Conn. 730, 732; *Gardiner* v. *Hayes,* 128 Conn. 332, 335. "The speed of an automobile may, like any other fact, be established by circumstantial evidence, and the court should admit in evidence any character of circumstances which would indicate the speed at which the automobile was traveling at the time of the accident." 9C Blashfield, Automobile Law and Practice (Perm. Ed.) § 6233; see *Clement* v. *DelVecchio,* 140 Conn. 274, 277. It was proper, for example, for the court to take into consideration the force of the impact; 9C Blashfield, op. cit. § 6234; the speed of the vehicle prior to the occurrence; id. § 6235; skid marks; 5 Berry, op. cit. § 5.281; the effects of the collision; id. § 5.286; the position and condition of the automobile after the impact; id. § 5.287; the distance the vehicle traveled after the impact; id. § 5.289; and the skidding after the application of the brakes; id. § 5.290. Statements based on the observation of witnesses who saw the progress of the car do not constitute the sole medium of proof on the issue of speed.

"Various factors, such as skid marks, . . . distance traveled after impact, force of impact, and the like, are pertinent in arriving at an estimate of the rate of speed of a motor vehicle." 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 949. "Where the facts show a conflict with . . . [the witnesses'] estimate of the automobile's speed, the facts control. Estimates of speed, as in cases of all other kinds of 'opinion' evidence, must give way to testimony of cold matters of fact and legitimate inferences therefrom." 15-16 Huddy, Automobile Law (9th Ed.) § 177. The wrecked car and the fuel tank, severed from the vehicle and embedded in the pole, when taken together with all the other attendant circumstances are mute but effective witnesses tending to prove that the defendant's automobile struck the telephone pole with violent force and great momentum as a result of the speed at which the defendant was driving as he zigzagged down the highway.

Our courts have repeatedly said that "[i]t is an open question for the trier to decide whether, in any given case, the speed is actually unreasonable under all the circumstances." *State* v. *Gordon,* 144 Conn. 399, 402. Its answer involves the weighing of conflicting evidence and the passing upon the credibility of witnesses, and the question whether the speed was reasonable or not is thus brought distinctly and peculiarly within the trier's province. See *Radwick* v. *Goldstein,* 90 Conn. 701, 706; *State* v. *Molinar,* 24 Conn. Sup. 160, 163.

The court was warranted in concluding upon all the evidence that the defendant was guilty beyond a reasonable doubt of a violation of § 14-219 of the General Statutes.

There is no error.

In this opinion KOSICKI and DEARINGTON, Js., concurred.