## ROBERT SKRZYPIEC ET AL. *v.* J. P. AUGUSTINE NOONAN ET AL.
### (14724)

PETERS, C. J., NORCOTT, KATZ, E. Y. O'CONNELL and FOTI, Js.

Argued September 22—decision released November 23, 1993

*Penn Rhodeen,* for the appellants (plaintiffs).

*Karen P. Blado,* with whom were *Gordon W. Patterson* and, on the brief, *Grant H. Miller,* for the appellee (named defendant).

*Thomas F. Kelsey,* for the appellee (defendant Richard L. R. Engelhardt).

NORCOTT, J. This appeal arises out of a dispute over the release of confidential information regarding psychiatric treatment. The plaintiff, Robert W. Skrzypiec,[1] brought an action alleging negligence and a violation of General Statutes §§ 52-146d and 52-146e[2] against

[1] Susan Skrzypiec, Robert Skrzypiec's wife, is also a plaintiff in this case. She seeks damages for the deprivation of the services, support and consortium of her husband. Because her claim is wholly derivative of Robert Skrzypiec's claim and will thus survive or be barred according to the disposition of the issues on appeal as applied to Robert Skrzypiec, this opinion does not refer to Susan Skrzypiec separately in her role as plaintiff.

[2] General Statutes § 52-146d provides: "PRIVILEGED COMMUNICATIONS BETWEEN PSYCHIATRIST AND PATIENT. DEFINITIONS. As used in sections 52-146d to 52-146i, inclusive: (1) 'Authorized representative' means (A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative;

"(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility;

"(3) 'Consent' means consent given in writing by the patient or his authorized representative;

"(4) 'Identifiable' and 'identify a patient' refer to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records;

"(5) 'Mental health facility' includes any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpatient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition;

"(6) 'Patient' means a person who communicates with or is treated by a psychiatrist in diagnosis or treatment;

"(7) 'Psychiatrist' means a person licensed to practice medicine who

the defendants, J. P. Augustine Noonan, a psychiatrist, and Richard L. R. Engelhardt, a social worker,[3] to recover damages resulting from the disclosure of confidential psychiatric information to the plaintiff's employer. The case was tried before a jury and was bifurcated to try the issues of duty and breach separately from the issues of causation and damages. The jury returned a verdict in favor of the plaintiff on the issues of duty and breach, but awarded no damages in the second phase of the trial. The trial court rendered judgment for the defendants. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On March 5, 1987, the plaintiff, a captain in the Southing-

devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified."

General Statutes § 52-146e provides: "DISCLOSURE OF COMMUNICATIONS. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

[3] Noonan regularly referred patients to Engelhardt for psychotherapy and supervised his treatment of them. Noonan also consulted with Engelhardt regarding his other patients including the plaintiff. Noonan regularly signed the medical reports of Engelhardt's patients to facilitate the payment of workers' compensation benefits.

ton fire department, attempted to rescue four people trapped in a burning building. In the course of his search, the plaintiff, after injuring his ribs, exhausted his portable air supply. Then, while crawling along the floor, he rolled over and found himself lying on the body of a dead child. At this point the plaintiff believed that his death was imminent. He managed, however, to make his way out of the building to safety. Despite the efforts of the plaintiff, three children and one adult perished in the fire.

The plaintiff testified that he was upset with the way the fire had been handled. He felt that errors in judgment had been made by the person in command at the scene because that person lacked the experience necessary to deal with the situation. Specifically, the plaintiff opined that the fire truck had been positioned incorrectly at the scene. He further testified that had this mistake not been made the four people who perished in the fire could have been saved. The plaintiff also testified that he felt guilty and responsible, as well as angry at his superiors and coworkers, for the deaths that resulted from the fire.

As a result of his involvement with the tragic fire of March 5, 1987, the plaintiff experienced severe emotional and psychological distress. He became withdrawn, experienced nightmares, had difficulty sleeping and increased his consumption of alcohol. The plaintiff sought counseling from Engelhardt and was diagnosed as suffering from posttraumatic stress disorder. In the course of his treatment with Engelhardt, the plaintiff was examined by Noonan for the purpose of obtaining medication to facilitate sleep. After a single examination, Noonan prescribed a sleeping pill for the plaintiff.

Because he was injured during the course of his employment, the plaintiff filed a claim for workers'

compensation benefits pursuant to General Statutes
(Rev. to 1987) § 31-294 and was receiving such bene-
fits during the entire course of his treatment.[4] This
benefits claim was premised on the plaintiff's mental
and emotional distress resulting from his role in the
fire. In response to a request for medical records made
by the Frank B. Hall Company, the workers' compen-
sation insurance carrier for the Southington fire depart-
ment, Engelhardt inadvertently sent a report detailing
the plaintiff's treatment to his employer, the Southing-
ton fire chief. The report addressed to the insurance
carrier consisted of a summary of Engelhardt's treat-
ment notes on Noonan's letterhead, over Noonan's sig-
nature. The report noted the plaintiff's symptoms and
their causes, including his anger and disapproval con-
cerning the mishandling of the fire. This report was
sent without the express written consent of the plain-
tiff. In fact, the plaintiff had specifically asked that he
be allowed to review and "sanitize" any such report
prior to its release.

---

[4] General Statutes (Rev. to 1987) § 31-294 provided in relevant part:
"NOTICE OF INJURY AND OF CLAIM FOR COMPENSATION. Any employee who
has sustained an injury in the course of his employment shall forthwith notify
his employer, or some person representing his employer, of such injury
. . . . No proceedings for compensation under the provisions of this chap-
ter shall be maintained unless a written notice of claim for compensation
is given within one year from the date of the accident or within three years
from the first manifestation of a symptom of the occupational disease, as
the case may be, which caused the personal injury . . . . The employer,
as soon as he has knowledge of any such injury, shall provide a competent
physician or surgeon to attend the injured employee and, in addition, shall
furnish such medical and surgical aid or hospital or nursing service, including
medical rehabilitation services, as such physician or surgeon deems rea-
sonable or necessary. Such physician or surgeon shall be selected by the
employee from an approved list of physicians and surgeons prepared by
the commissioners . . . . All medical reports concerning any injury of an
employee sustained in the course of his employment shall be furnished the
employer or employee or his attorney at the request of such employer,
employee or attorney. . . ."

Section 31-294 has since been repealed and replaced by General Statutes
§§ 31-294a through 31-294g.

At trial, the plaintiff and the defendants advanced substantially different theories as to the effects of the disclosure on the plaintiff's mental and emotional well-being. The plaintiff testified that as a result of the disclosure his nightmares and inability to sleep had worsened and he had experienced intense rage and uncontrollable anger toward the defendants. He further testified that as a result of the disclosure he felt betrayed and could not trust anyone enough to continue treatment. This testimony was corroborated at trial by the testimony of three psychiatrists offered as expert witnesses by the plaintiff. All three experts agreed that the plaintiff suffered from posttraumatic stress disorder due to his experience in the fire and that his treatment for that disorder was hindered by the disclosure.

Walter Borden, a psychiatrist who evaluated the plaintiff in the months immediately following the disclosure for the purpose of diagnosis only, testified that the disclosure delayed the plaintiff's recovery by making it impossible for him to continue treatment with Engelhardt. He further testified that the disclosure undermined the progress the plaintiff had been making in treatment and that future treatment would be problematic because of the plaintiff's inability to trust others. Borden's opinion was that, absent the disclosure, the plaintiff would have taken between six and eighteen months to achieve substantial recovery.

Laurence Goldstein, a psychiatrist who treated the plaintiff from October 5, 1987, through August 11, 1989, testified that subsequent to the disclosure the plaintiff had suffered from disturbed sleep, anxiety and depression requiring treatment with drugs. Goldstein testified that both the fire and the disclosure had caused the problems for which he was treating the plaintiff. He also testified that the disclosure increased the difficulty of treatment by, among other complications,

requiring more extensive use of medication than was previously necessary.[5]

Sally Satel, a psychiatrist who treated the plaintiff from April 11, 1990, through the time of trial, also testified that the disclosure had impaired the plaintiff's ability to trust other health care providers, damaged his self-esteem and caused him to lose confidence, thus impairing his receptiveness to psychiatric treatment. In her opinion, the plaintiff would have returned to "reasonable baseline functioning" within nine to twelve months of the fire had it not been for the disclosure.

Conversely, the defendants argued that the plaintiff's injuries had been caused by the fire and not the disclosure. They relied primarily on the expert testimony of Neil Leibowitz, a psychiatrist, who, on behalf of the defendants, examined the plaintiff in anticipation of the trial. Leibowitz agreed with the other experts that the plaintiff suffered from posttraumatic stress disorder brought on by the fire. Leibowitz, however, disagreed as to the effect of the disclosure on the plaintiff's subsequent symptomology. He testified that after the fire the plaintiff had suffered from severe internal conflict. The plaintiff did not trust his coworkers. He felt betrayed by them and angry at them for the way in which they had handled the fire, but he also had to depend on them to continue in his role as a fire fighter. Leibowitz testified that the rage and anger directed at the defendants was simply the projection of the plaintiff's feelings toward his coworkers. He testified that this displacement allowed the plaintiff to resolve his internal conflict with the least disruption to his life.

Leibowitz also testified, as further support for his theory, that the disclosure was a relatively harmless event.

---

[5] Goldstein treated the plaintiff with Halcion for sleep disturbance, Valium for agitation, and Norpramin, Triavil, Trilafon, Pamalore and Prozac for depression.

He pointed to the fact that the release of such a report is an everyday occurrence and that in his opinion it did not rise to the magnitude of a death, a fire or other disastrous event that might cause posttraumatic stress disorder in a person. Leibowitz also asserted that the effect of the disclosure was tempered by the fact that the plaintiff had previously confronted his boss and coworkers with his negative feelings about the handling of the fire.

The jury returned a verdict in favor of the plaintiff on the issues of duty and breach, but awarded zero damages during the second phase of the trial. The trial court thereafter rendered judgment for the defendants. The plaintiff moved to set aside the verdict, which motion was denied by the court. The plaintiff then brought this appeal claiming that the trial court abused its discretion by: (1) denying his motion to set aside the verdict on the basis that the evidence did not support a verdict that the disclosure of the confidential psychiatric information had caused no injury to the plaintiff; (2) refusing to give curative instructions after defense counsel's allegedly improper legal argument to the jury; (3) refusing to charge the jury on the defendants' liability for harm caused by a subsequent doctor and injury to an unusually vulnerable person; (4) limiting cross-examination of the defendants' expert witness; and (5) allowing Leibowitz to testify as to the effect of Borden's examination on the plaintiff.[6] For the following reasons, we affirm the judgment of the trial court.

---

[6] The defendants argued, as an alternate ground for affirmance, that the Workers' Compensation Act (act), General Statutes (Rev. to 1987) § 31-294, requires disclosure of medical reports and, thus, precludes a determination that the disclosure was either a violation of General Statutes §§ 52-146d and 52-146e or a breach of the medical standard of care.

Because we affirm the rulings of the trial court with respect to the jury finding of no damages, we are not required to address this claim. We do, however, note the following. The disclosure by the defendants of a medical report to the plaintiff's employer was required, upon request by the

I

We first consider the plaintiff's claim that the trial court improperly denied his motion to set aside the verdict on the ground that the jury could not reasonably have concluded that the plaintiff suffered no harm as a result of the disclosure of the psychiatric report to his employer. There is adequate evidence in the record to support the jury verdict. It was not, therefore, an abuse of discretion for the trial court to deny the plaintiff's motion.

"In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. *Campbell* v. *Gould,* 194 Conn. 35, 41, 478 A.2d 596 (1984). The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness. *Herb* v. *Kerr,* [190 Conn. 136, 139, 459 A.2d 521 (1983)]; *Katsetos* v. *Nolan,* [170 Conn. 637, 656, 368 A.2d 172 (1976)]. This is so

employer, by § 31-294. See footnote 4. Furthermore, the privilege of confidentiality provided by §§ 52-146d and 52-146e does not obviate this requirement. See footnote 2.

The primary purpose of the act, General Statutes § 31-275 et seq., is to provide prompt and adequate medical care for employees who sustain injuries arising out of and in the course of their employment. *Lynn* v. *Haybuster Mfg., Inc.,* 226 Conn. 282, 297, 627 A.2d 1288 (1993). The act requires that the employer shall furnish this medical care upon notice of the injury from the employee. Once the medical treatment has been so provided, the employer is entitled to all medical reports concerning the injury. See *Delgaizo* v. *Veeder-Root, Inc.,* 133 Conn. 664, 667, 54 A.2d 262 (1947). The act requires that "[all] medical reports concerning an injury of an employee . . . shall be furnished the employer . . . at the request of such employer . . . ." General Statutes (Rev. to 1987) § 31-294. Sections 52-146d and 52-146e, on the other hand, create a privilege for written communications and records relating to psychiatric treatment which forbids their disclosure without consent. We leave the reconciliation of these statutes to another day.

because [f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury. *Birgel* v. *Heintz,* 163 Conn. 23, 26, 301 A.2d 249 (1972) . . . . It is the function of this court to determine whether the trial court abused its discretion in denying [a party's] motion. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 139, 540 A.2d 666 (1988)." (Internal quotation marks omitted.) *Coelho* v. *Posi-Seal International, Inc.,* 208 Conn. 106, 112–13, 544 A.2d 170 (1988). In reviewing this issue, our sole responsibility is to decide whether, on the evidence presented, the jury could fairly have reached the conclusion it did. *Wu* v. *Fairfield,* 204 Conn. 435, 440, 528 A.2d 364 (1987).

In support of his claim that the evidence did not reasonably support the jury's verdict on the issues of causation and damages, the plaintiff focuses on the considerable evidence presented at trial showing that he suffered mental and emotional distress. As detailed at the outset of this opinion, however, there was conflicting evidence presented by both sides as to the cause of the deterioration in the plaintiff's condition subsequent to the disclosure. The existence of conflicting evidence limits the court's authority to overturn a jury verdict. The jury is entrusted with the choice of which evidence is more credible and what effect it is to be given. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 58, 578 A.2d 1054 (1990).

Even if the defendants owed the plaintiff a duty to honor his request for confidentiality; see footnote 6; the jury could have found that the plaintiff suffered no harm as a result of that breach. There was substantial evidence that the plaintiff's problems were caused by the fire and not by the disclosure. There was ample evidence indicating that the plaintiff was angry at and did

not trust his coworkers and superiors as a result of his perception that the fire had been mishandled. Leibowitz testified that these feelings had created an intense conflict within the plaintiff between his need to rely on these people at work and his inability to trust them. Leibowitz further testified that the plaintiff had resolved this conflict by displacing all of his fire related feelings of anger, frustration and betrayal onto the defendants.[7]

In addition, Leibowitz testified that the disclosure of the report was not emotionally disruptive enough to induce posttraumatic stress disorder. He pointed to the fact that the release was in itself quite innocuous. The chief of the fire department who received the report already knew that the plaintiff was receiving treatment and the reasons therefor. The chief also knew of the plaintiff's criticisms of the department and had in fact discussed them with the plaintiff prior to his receipt of the report. On the basis of this information, Leibowitz opined that the release did not cause any posttraumatic stress disorder in the plaintiff. The plaintiff continued his service in the fire department and was promoted despite this disclosure. The jury could reasonably have found, based on this evidence, that the disclosure did not proximately cause the plaintiff's injuries, but merely caused him to refocus his unresolved feelings caused by the fire onto the defendants.

Because there was evidence in the record tending to support the verdict reached by the jury, we conclude that it was within the discretion of the trial court to refuse to set aside the verdict.

## II

We next consider the plaintiff's claim that the trial court improperly refused to give curative instructions

---

[7] All of the experts who testified at the trial recognized the validity of the phenomenon of displacement.

to the jury regarding three instances of allegedly improper legal argument to the jury by defense counsel. The plaintiff claims that: (1) counsel for Engelhardt misstated the law regarding compensability of anger and rage as part of mental distress; (2) counsel for Noonan misstated the law regarding inferences to be drawn from workers' compensation payments made to treating psychiatrists; and (3) counsel for Noonan misstated the law regarding the defendants' responsibility for harm caused by subsequent treatment. We conclude that the plaintiff's first claim of impropriety was not properly preserved in the trial court, and therefore do not reach its merits. We further conclude that the trial court's rulings with respect to the plaintiff's second and third claims were not an abuse of its discretion.

### A

We first address the plaintiff's claim as to the argument proffered by counsel for Engelhardt regarding compensability of rage and anger as part of mental distress. "This court will not consider claimed errors on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon and decided by the trial court . . . ." *State* v. *Simms,* 170 Conn. 206, 208, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976); Practice Book § 4185.[8] Indeed, if he fails to take proper exception to arguments of counsel and fails to request a charge respecting them "the plaintiff is deemed to have waived this claim of error." *Del Prince* v. *Bristol,* 153 Conn. 168, 170, 215 A.2d 128 (1965). The purpose of this rule is to alert the trial court to claims of error while there is still an opportunity for correction. See *Berry* v. *Loiseau,* 223 Conn. 786, 814, 614 A.2d 414 (1992).

---

[8] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial."

By agreement of the parties, objections to argument and exceptions to the jury charge were deferred until after the arguments and jury charge had been completed. Review of the record reveals that the plaintiff did not distinctly raise his objections to the arguments of defense counsel regarding compensability of rage and anger as part of mental distress nor did he clearly request that a corrective charge be given to the jury. The record indicates that the plaintiff asserted that the argument was improper while also maintaining that he thought "the issue [was] probably clear to the jury." He also did not ask for a curative instruction. A claim of impropriety coupled with a concession that the issue is clear to the jury is insufficient to alert the trial court to a claim of error. This is particularly true where, as here, the party fails clearly to request that a curative instruction be given.[9] This claim, therefore, was not distinctly raised at trial.

In light of his failure distinctly to raise this claim at trial, the plaintiff requests review under the plain error exception to Practice Book § 4185.[10] "Only in the most exceptional circumstances[, however,] will this court consider a claim that was not raised [below]. *Cahill* v. *Board of Education,* 187 Conn. 94, 99, 444 A.2d 907 (1982); see Practice Book § 4185. Such exceptional cir-

[9] The plaintiff claims to have requested curative instructions by stating: "To the extent that substantial accord and curative instruction are magic words that are left out of my exceptions and so forth, I'd like them put in." This "request" was made after the plaintiff had taken his exceptions to the jury charge and during the period when the defendants were taking their exceptions. We find such an ambiguous request inadequate because it fails to distinguish whether the request applies to the objections to argument or the exceptions to the jury charge. In addition, the plaintiff's assertion that the issue was clear to the jury made it impossible for the trial court to ascertain that such a request applied to this claim.

[10] Practice Book § 4185 provides in relevant part: "The court may in the interests of justice notice plain error not brought to the attention of the trial court."

cumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Williams,* 182 Conn. 262, 267, 438 A.2d 80 (1980); *State* v. *Evans,* [165 Conn. 61, 69, 327 A.2d 576 (1973)]. An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties. *Cahill* v. *Board of Education,* supra, 100." (Internal quotation marks omitted.) *Dubois* v. *General Dynamics Corp.,* 222 Conn. 62, 68–69, 607 A.2d 431 (1992). The plaintiff has pointed to no exceptional circumstances in the present case and, accordingly, we decline to review the merits of this claim.

B

We next consider the plaintiff's claims that counsel for Noonan made improper argument to the jury by misstating the law regarding inferences to be drawn from evidence related to workers' compensation benefits and the defendants' responsibility for harm caused by subsequent treatment. We conclude that the argument in question was neither a misstatement of the law nor unreasonable. The rulings of the trial court denying curative instructions, therefore, were clearly within its discretion.

"[T]he trial court is invested with a large discretion with regard to the arguments of counsel; *Tomczuk* v. *Alvarez,* 184 Conn. 182, 193, 439 A.2d 935 (1981); *Levin* v. *Ritson,* 179 Conn. 223, 226, 425 A.2d 1279 (1979); see also *State* v. *Herring,* 210 Conn. 78, 102, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989) . . . ." (Internal quotation marks omitted.) *Bartholomew* v. *Schweizer,* 217 Conn. 671, 678, 587 A.2d 1014 (1991). "[W]hile its action is subject to review and control, we can interfere only where

the discretion was clearly exceeded or abused to the manifest injury of some party." (Internal quotation marks omitted.) *Tomczuk* v. *Alvarez*, supra. In fact, the court must allow " '[c]ounsel . . . a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel . . . .' " *State* v. *Plaza,* 23 Conn. App. 543, 553, 583 A.2d 925 (1990), cert. denied, 217 Conn. 811, 587 A.2d 153 (1991), quoting *State* v. *Laudano,* 74 Conn. 638, 646, 51 A. 860 (1902).

"In argument before the jury, counsel may comment upon facts properly in evidence and upon reasonable inferences drawn therefrom." *State* v. *Kinsey,* 173 Conn. 344, 348, 377 A.2d 1095 (1977). It is, thus, axiomatic that the advocate may also entreat the jury to draw reasonable inferences and conclusions from the evidence.

The plaintiff objected to the portion of Noonan's argument in which he referred to testimony and documentary evidence related to workers' compensation payments made to the plaintiff for his injuries after the disclosure. The plaintiff claims that the defendant's argument was contrary to the law because injury caused by complications in the treatment of a work-related injury is compensable under workers' compensation. The reports and testimony, however, were not offered to make a legal claim regarding the effect of the plaintiff's receipt of workers' compensation benefits; rather, the defendant asked the jury to infer from the evidence that the plaintiff's treating psychiatrists believed that his injuries were caused by the fire and not the disclosure.

Noonan was asking the jury to base its inference on the manner in which the coverage was procured, not on the existence of such coverage. The documentary

evidence on which Noonan relied consisted of a letter to the workers' compensation commission from Goldstein and bills from Goldstein and Satel which were paid through workers' compensation. The letter stated that the injuries for which the plaintiff was being treated were caused by the fire. In fact, the letter failed to mention the disclosure at all. The inference as to the psychiatrists' beliefs and the conclusion that the injuries were caused by the fire and not by the disclosure, are reasonable and based upon facts in evidence. As such they are within the proper bounds of zealous argument, and the ruling was within the trial court's discretion.

The plaintiff also objected to Noonan's argument on the ground that it was a misstatement of the law to contend that any harm caused by a subsequent doctor was not the responsibility of the defendants. This claim must fail, however, because Noonan did not so argue and the argument made was not a misstatement of the law.

Noonan did not argue to the jury that the defendants were not responsible for any harm caused by subsequent doctors. He argued that the defendants were not liable for any of the plaintiff's injuries caused by his failure properly to mitigate or minimize his damages through reasonable treatment choices. "[A]n injured party can recover from the original tort-feasor for damages caused by the negligence of a doctor in treating the injury which the tort-feasor caused, *provided the injured party used reasonable care in selecting the doctor.*" (Emphasis added.) *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 596, 356 A.2d 873 (1975).

As the trial court noted, there was evidence of gaps in the plaintiff's treatment. Following the disclosure in May, 1987, the plaintiff terminated treatment with Engelhardt and did not begin treatment with Goldstein

until four months later in October of the same year. In the interim, he elected to meet with Borden, not for treatment, but to evaluate whether he had grounds for a lawsuit based on the disclosure. Furthermore, Borden testified that the plaintiff was resistant to therapy. There was also evidence that the plaintiff continued treatment with Goldstein despite his dissatisfaction with that treatment. From this evidence, the jury could reasonably have inferred that the plaintiff did not use reasonable efforts to mitigate his damages. Noonan's argument to that effect was thus reasonable and supported by the evidence in the case. Consequently, the trial court properly decided not to give a curative instruction to the jury.

We find no abuse of the trial court's discretion in its rulings on either of the arguments made by counsel for Noonan.

### III

We next address the plaintiff's claim that the trial court improperly refused to charge the jury that the defendants were responsible for harm caused by a subsequent doctor and were responsible for harm caused regardless of any unusual vulnerability the plaintiff may have had. We conclude that the charge given by the trial court sufficiently guided the jury on the issues presented at trial.

"In assessing the adequacy of a charge to the jury, we consider the charge in its entirety, and judge it by its total effect rather than by its individual component parts. *Van Steensburg* v. *Lawrence & Memorial Hospitals,* 194 Conn. 500, 507, 481 A.2d 750 (1984). We consider whether the instructions are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. *Hall* v. *Burns,* 213 Conn. 446, 482, 569 A.2d 10 (1990); *Grecki* v. *New Britain,* 174 Conn. 200, 203, 384 A.2d 372 (1978); *Mack* v. *Perzanowski,*

172 Conn. 310, 313, 374 A.2d 236 (1977); *Nally* v. *Charbonneau,* 169 Conn. 50, 55–56, 362 A.2d 494 (1975). The charge must give the jury a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and must be suited to guide them in the determination of those issues. *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 566, 562 A.2d 1100 (1989); *Nally* v. *Charbonneau,* supra." *Goodmaster* v. *Houser,* 225 Conn. 637, 644–45, 625 A.2d 1366 (1993).

The plaintiff filed a written request to charge the jury that the defendants were not entitled to diminish their damages by claiming that the plaintiff was harmed by subsequent treatment or examination in connection with any injury that they had caused. The trial court refused to give this instruction on the basis that it was not an issue in the case. As discussed above, the evidence regarding the plaintiff's treatment subsequent to the disclosure was used to show that his efforts to mitigate damages were unreasonable and the jury charge appropriate to this issue was delivered. "The court's obligation is to frame its instructions so as to be adapted to the issues which are in the case. . . . It should refrain, as it properly did here, from addressing issues which are not in the case." (Citation omitted.) *Dimeo* v. *Burns, Brooks & McNeil, Inc.,* 6 Conn. App. 241, 245, 504 A.2d 557, cert. denied, 199 Conn. 805, 508 A.2d 31 (1986).

The plaintiff also filed a written request to charge the jury that the defendants would be liable for any injury caused by the disclosure regardless of whether the plaintiff was unusually vulnerable to such harm.[11]

[11] The plaintiff's request to charge on the issue was: "If you find that the disclosure of records caused Mr. Skrzypiec injuries and disabilities, it makes no difference if he is in a small minority of people to whom this can be expected to occur after this type of trauma. Under those circumstances you must still award him full, adequate and compensatory damages for all

The trial court did not give the exact charge requested, but it did instruct the jury as follows: "A defendant takes the plaintiff as he finds him, and with all the infirmities. So that if you find that there was a pre-existing situation, which was made worse or aggravated in some way by this disclosure, and if you are satisfied that this happened within reasonable medical probability, then you may allow damages for that particular aggravation."

"The court is under no duty at any time to charge in the exact language requested. *State* v. *Maresca,* 173 Conn. 450, 460, 377 A.2d 1330 (1977); *Radwick* v. *Goldstein,* 90 Conn. 701, 706, 98 A. 583 (1916). Failure to charge precisely as proposed by a defendant is not error where the point is fairly covered in the charge. *State* v. *Colton,* 174 Conn. 135, 141, 384 A.2d 343 (1977). Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues. *State* v. *Bennett,* 172 Conn. 324, 330, 374 A.2d 247 (1977); *Duley* v. *Plourde,* 170 Conn. 482, 489, 365 A.2d 1148 (1976); *Goggins* v. *Reinzo Trucking Co.,* 166 Conn. 240, 248, 348 A.2d 569 (1974)." *Tomczuk* v. *Alvarez,* supra, 190. In the present case, the trial court sufficiently instructed the jury, using the appropriate rules of law, with respect to the issue of the plaintiff's unusual vulnerability. Furthermore, we find no substantial difference between the requested charge and that given by the court.

Accordingly, we conclude that the trial court did not abuse its discretion when it refused to give either jury instruction requested by the plaintiff.

injuries which you find have been caused by the disclosure, regardless of whether or not this will only happen to a small minority of people. The test is, was the disclosure of [sic] substantial factor in causing the damage, not whether it would be likely to cause such damage."

## IV

We now turn to the plaintiff's claim that the trial court abused its discretion when it limited his cross-examination of the defendants' expert witness, Leibowitz, by sustaining defense objections to two questions. The plaintiff claims that these questions were relevant to the witness' experience in treating and evaluating cases similar to the present one.[12] Leibowitz was first asked, "How many patients have you evaluated who claimed that a major component of their illness is a breach of confidence?" The objection was sustained on the ground that the question was phrased too broadly to elicit a meaningful response because it failed to specify the type of illness involved.

Next, Leibowitz was asked, "What experience, if any, Doctor, do you have in assessing impact of a disclosure such as the one claimed here, with Exhibit A going to Mr. Skrzypiec's chief, what experience do you have in attempting to evaluate the impact of that on the individual?" The objection to this question was sustained on the ground that it was phrased too narrowly because it focused too closely on the specific facts of this unusual case to shed any light on the witness' experience with breaches of confidentiality generally, or the ensuing effect of such a breach on a person suffering from post-traumatic stress disorder.

The plaintiff argues that cross-examination is a substantial right which should be liberally allowed; *Pickman* v. *Pickman,* 6 Conn. App. 271, 277–78, 505 A.2d 4 (1986); however, proper cross-examination must be relevant to be admissible. *Ayers Co.* v. *Novelty Textile Mills, Inc.,* 168 Conn. 577, 578, 362 A.2d 969 (1975); *Conley* v. *Board of Education,* 143 Conn. 488, 495, 123 A.2d 747 (1956). "The trial court has broad discretion to determine the relevancy of evidence, and we will not

---

[12] We note that Leibowitz had already been qualified as an expert witness by the court.

disturb a trial court's ruling on the admissibility of evidence in the absence of a clear abuse of discretion. *State* v. *Holliman,* 214 Conn. 38, 50, 570 A.2d 680 (1990)." *State* v. *Sauris,* 227 Conn. 389, 407, 631 A.2d 238 (1993). This broad discretion extends to the admissibility of expert testimony which the trial court finds is without probative value for the jury. *Going* v. *Pagani,* 172 Conn. 29, 35, 372 A.2d 516 (1976). Here the trial court ruled that the plaintiff's questions were phrased so that the answers elicited would not have been helpful to the jury in determining Leibowitz' experience with the issues at hand. For the reasons stated above, we find no abuse of discretion by the trial court in its refusal to allow these questions.

## V

The plaintiff finally claims that the trial court abused its discretion when it allowed Leibowitz to testify regarding the impact of Borden's examination on the plaintiff. At trial, the plaintiff objected to this line of questioning as irrelevant.[13]

As previously noted, whether the plaintiff acted with due diligence in seeking treatment to mitigate his damages caused by the disclosure was at issue in this case. See *Anderson & McPadden, Inc.* v. *Tunucci,* supra. The question was raised whether it was reasonable for the plaintiff to forego psychiatric treatment for four months while seeing Borden to assess the possibility

---

[13] The plaintiff argued before this court that the testimony should have been barred because it was improperly sought for the purpose of diminishing or eliminating damages and as such was "highly prejudicial" on the issue of causation. We decline to address this claim as it was not properly preserved for appellate review. The only ground for objection raised at trial was relevance. "We will not promote a Kafkaesque academic test by which [a trial judge] may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." (Internal quotation marks omitted.) *Misiurka* v. *Maple Hill Farms, Inc.,* 15 Conn. App. 381, 385, 544 A.2d 673, cert. denied, 209 Conn. 813, 550 A.2d 1083 (1988).

of bringing a lawsuit against the defendants. Leibowitz' opinion bears directly on this issue by showing the impact on the plaintiff of what the jury could reasonably have concluded was an unreasonable treatment choice. Leibowitz' testimony on this issue was thus extremely relevant to a significant issue in the case. We conclude, therefore, that the trial court did not abuse its broad discretion; see *State* v. *Sauris,* supra; with regard to the relevance of this testimony.

The judgment is affirmed.

In this opinion the other justices concurred.