[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT TUCCI'S MOTION FOR SUMMARY JUDGMENT
The defendant has filed a motion for summary judgment against the action brought by an injured state police officer. The undisputed facts are that the plaintiff was dispatched to Interstate 95 to help in the pursuit of a driver, the defendant Tucci. It was thought that Tucci was driving in an unsafe manner. Tucci failed to heed officer's signals to pull his vehicle over. Traffic was backed up due to road construction ahead of the pursuit and the plaintiff claims that Tucci's operation of his car posed a threat to other traffic. In trying to stop the Tucci vehicle, the plaintiff drove his cruiser in the left lane adjacent to the defendant. The defendant, in his complaint, then says Tucci drove his car at a high rate of speed, swerved into the officer's lane striking the trooper's car and seriously injuring him. The defendant has attached the CT Page 9266 police report and a statement from the plaintiff to his motion for summary judgment as well as reports of other state troopers. They basically support the allegations of the plaintiff's complaint. The police report further notes that before the crash, Tucci was operating his vehicle at speeds ranging from 40 to 85 miles per hour. The chase lasted 14 miles and during the pursuit, Tucci made unsafe lane changes. One report indicates the plaintiff went on to I-95 in Westbrook in attempting to stop Tucci with "emergency lights and siren activated," the trooper was driving a marked police cruiser.
The reports, to which the plaintiff did not object, further indicate Mr. Tucci lived in Bridgeport and left his home to go to the store. The plaintiff, Trooper Kelly, said that after the accident Tucci appeared dazed and disorientated, he was elderly and had physical ailments. Tucci told the officer he thought he was in Bridgeport-the accident happened in Westbrook at least forty miles to the east. Tucci further stated he was a diabetic — he did not even remember getting on the highway and claims not to have seen the police vehicles behind him with their lights and sirens on. The officers at the scene had Tucci transported to a clinic for observation. Another officer said Tucci appeared disorientated. Tucci was only charged with speeding, § 14-219 (e) and unsafe lane change, § 14-236. The defendant has now filed a motion for summary judgment. he claims the so-called Firefighter's Rule bars the plaintiff's action. He also argues that no exception to the operation of that rule, such as an allegation of resisting arrest, prevent the application of that rule. The plaintiff argues that the Firefighter's Rule should not apply to non-premises liability cases that is cases where an officer is injured in a public place and not on premises to which he or she has been summoned.
The standards to apply in a summary judgment matter are well-known. where there is a genuine issue of material fact, the court should not decide it since a party is entitled to a jury trial. In this case, there does not appear to be dispute over the facts, the question is one of law.
 I
The Firefighter's Rule presents a host of interpretive problems where it has been adopted both as to its application and exceptions to its application. Hawaii adopted the rule in 1991. See Thomas v. Pang,811 P.2d 821 and Judge Padgett in dissent said the following:
 "Until today, Hawaii has not adopted the so-called "Fireman's Rule" which bars a fireman in the course of his duties from bringing suit against the owner of a CT Page 9267 buring building for the owner's negligence. As the majority opinion clearly indicates, the courts which have adopted the "Fireman's Rule" have had great difficulty in explaining the legal rationale upon which it rests, and have adopted various explanations to justify the result reached. Moreover, those courts have also riddled the rule with exceptions. When a rule of law is so difficult of explanation that courts adopting it have tried to buttress it with varying, shaky, legal explanations, and have shot ir full of exceptions, it is usually because the rule is unjust. That is the case here." 811 P.2d at p. 826.
Judge Padgett's observations concerning application of the rule in premises and non-premises liability cases are well-supported by reviewing Sections 431 through 437 of 62 Am.Jur.2d "Premises Liability", see d. Fireman's rule; Assumption of Risk.
The rule has been around many years in our state, first being mentioned in Roberts v. Rosenblatt, 146 Conn. 110 (1959) and extended to police officers, without mentioning the rule by name, in Kaminski v. Fairfield,216 Conn. 29, 28 (1990), and explicitly so extended in Furstein v. Hill,218 Conn. 610, 615 (1991) which oddly enough did not mention Kaminiski.
No appellate cases in this state have extended the application of the rule beyond situations where the firefighter or police officer is injured because of his presence on private property or to state the converse: "No Connecticut Appellate Court has extended the rule to a situation . . . in which the injury to the safety officer occurred on public property."Castaglioulo v. Hullen, 1997 Sup. Ct. 2439 (Judicial District of New London, Hendel, J.). (Police officers injured in highway accidents.)
The difficulty in applying the rule is reflected in well-reasoned lower court opinions discussing whether it should be extended to injuries ro police officers on so-called public property, cf. for example Castaglioulov. Hullen, supra, and Apuzzo v. Kobuta, 1997 Sup. Ct. 406 (Judicial District of New Haven, Silber, J.) with Davis v. Kim,21 Conn.L.Rptr. 512
(1998, Aurigemma, J.) and Fournier v. Battista, 17 Conn.L.Rptr. 263
(1996, Handy, J.) which argue for the extension of the rule to non-premises liability situations.
Several jurisdictions apply the rule to non-premises liability situations involving safety officers. Berko v. Freda, 459 A.2d 663 (NJ, 1983) and Walters v. Sloan, 571 P.2d 609 (Cal., 1997) are two examples mentioned in Kaminiski and Furstein, also see England v. Tasker,529 A.2d 938 (NH, 1987) mentioned in Furstein. In Court v. Grzelinski,379 N.E.2d 281, 284 (Ill., 1978), the court refused to extend the rule to CT Page 9268 bar recovery by a firefighter attempting to extinguish a car fire taking place in a public street. The dissent makes an observation difficult to rebut at page 286:
 "The majority appears to be willing to apply the fireman's rule only in the "limited context of landowner/occupier liability." This implies that the majority would not permit a fireman to recover for injuries he receives in extinguishing a fire in my automobile which I caused by negligently pouring gasoline on the hot manifold if the automobile is parked in my driveway, but that he would be permitted to recover if my automobile is parked in the street. This appears to me not only to be extremely illogical but also to possibly present some constitutional questions."
But extension of the rule to police officers in non-premises liability situations raises perhaps even sillier situations. In Walters v. Sloan,571 P.2d 609, the California court reached a remarkable result. There, an officer was placing a ticket on an illegally parked car and while doing so, he was injured by a speeding car. The California court held that the officer could maintain an action against the speeder but the Firefighter's Rule bars recovery against the owner of the parked car. Indeed, perhaps in reaction to such hairsplitting, in Lave v. Newman,317 N.W.2d 779, 787 (Neb., 1982), the court said, in what does appear to be the minority view:
 "The reasons which justify the application of the fireman's (sic) rule in cases where firemen (sic) were injured in fires involving personal property are the same reasons which support the rule in fires involving real property. A similar analogy cannot be made as to police officers injured while performing their duty not on private premises."
For cases, see generally, Modern Tort Law, Lee and Lindahl, Vol. 3, § 39.12, pp. 403 et seq., 41 P.O.F.2d 133, Am.Jur.2d discussion previously referenced.
The question now before the court then is whether in our state, the logic of cases like Furstein and Kaminski warrant or even require a holding that a police officer injured in a motor vehicle incident on a public highway by another's negligence is barred from bringing a common law action against the negligent party. The reader of this opinion might have gathered by this point that this court at least is not a great fan CT Page 9269 of the Firefighter's Rule — that necessarily militates against extending it when the Appellate Courts require no such result. The court will try to answer the question before it by analyzing Furstein. But frankly, first it is necessary that Kaminski v. Fairfield, supra, be honestly and fairly dealt with by the court.
In that case, the parents of a mentally ill person sued the police officer who shot the son in the parents' home. The police officer in turn sued the parents in a counterclaim. The mother had called a crisis intervention team because her paranoid-schizophrenic son had been acting in a bizarre and aggressive fashion. The team contacted the Fairfield Police Department who sent an officer to the parents' home with the team. When they got to the home, the deceased became agitated and ran to an upstairs bedroom — the officer followed. The deceased struck him with an axe, severely injuring the officer and the officer shot and killed the plaintiffs' son. The officer claimed that the plaintiffs knew of the deceased's dangerous propensities, knew he had axes and failed to warn him. The court first ruled that there was no cause of action permitting the officer to sue because they had no duty as parents, to act as custodians to control their son's behavior. Instead of stopping there, the court went on to hold that the parents violated no duty to warn because they told the crisis team of the son's dangerous disposition. Finally, the court, without explicitly saying so, applied the Firefighter's Rule, p. 38, et seq to bar the officer's claim and in an incident occurring on premises to which this officer was called citedBerko v. Freda, supra, and Walters v. Sloan, supra. But Berko andWalters are cases which applied the Firefighter's Rule to bar a police officer's suit but the incidents occurred on a public highway not premises.
It might be said, to paraphrase the dissent in Court v. Grzeliniski,
supra, if you follow the rule at all how could you rationally bar recovery to the officer who entered the parents' home in a situation likeKaminski, but permit the same officer to sue for injuries inflicted by the son, if he had broken loose from the house with an axe in hand and the fatal confrontation took place on the street with an officer claiming that the parents knew the son was mentally ill but allowed him to keep several axes in his room? Recovery should be barred in both cases.
But that brings us to Furstein v. Hill, 218 Conn. 610 (1991). There, although the court applied the Firefighter's Rule to a police officer's claim in a premises liability case, recovery was not absolutely ruled out of the question. In other words, the effect of the court's ruling was to treat firefighters and police officers entering premises as licensees. Recovery could still be possible, the court noted, under the principles set forth in § 342 Restatement (Second) Torts providing protection to CT Page 9270 licensees. The possessor of the premises could be held liable if in the situation presented, he or she knew or had reason to know of an unreasonable risk of harm and the possessor should have realized the licensee would not discover the danger and yet failed to correct the condition or warn of it and the licensee did not know of the dangerous condition or have reason to know of it. Id., pp. 624-25. What about the axes in the son's room in Kaminski, how does that fit in with § 342 of the Restatement? Kaminski is not even mentioned in Furstein, so what is its authority for? The analytical complication of extending the rule to bar police officer suits injured on public property are revealed by this observation — even if Kaminski were to be considered authority for extending the Firefighter's Rule to non-premises liability situations, how is it fair to extend the rule to bar actions by safety officers in such cases without taking into account some of the policy considerations expressed in § 342 of the Restatement which at least affords some protection to officers who enter premises as licensees? True officers injured on the street can bring suit if they are intentionally or recklessly injured but so can officers similarly injured when entering premises but they have the added protection of § 342 policy approved by our court. In any event, Kaminski and its implications do not offer much insight on the problem now before the court.
All of this leads the court to believe the best way to determine whether our court will explicitly extend the Firefighter's Rule to non-premises liability situations, or perhaps more exactly, whether a trial court must assume such will be the case, is to examine Furstein
itself. In a case just decided by this court, the court assumed for the purposes of argument that our court will extend the rule as the defendant suggests but found an exception applied to bar application of the rule.Levandoski v. Cone, Docket No. 542714, Judicial District of New London, July 11, 2000. The court is less convinced of that upon further reflection but will repeat the analysis given in that case.
What are the reasons the Furstein court gives applying the Firefighter's Rule in the case before it and do those reasons compel this court to hold that the rule be extended to bar negligence actions by police officers injured in non-premises liability situations — that is on public property such as a highway.
It must be recognized that Furstein is dealing with a premises liability case. It firsts talks about the common law origin of the doctrine. It then states that since police officers can enter on property at any time at any place it would place heavy burden on property ownership to require a landowner to keep all parts of his or her property safe. 218 Conn. pp. 616-17 — that is hardly an applicable consideration in answering the question stated above and now before the CT Page 9271 court. The court then goes on to note that some jurisdictions adopt the rule as a variation of assumption of risk doctrine. The court quotes a New Jersey case to the effect that the very nature of police and firefighting involves confrontation with danger "the public should not be liable for damages for injuries occurring in the performance of the very function police officers and firefighters are intended to fulfill.'" Id., p. 618. But what or who is the "public" — one assumes the court means the taxpaying public that owns property, pays taxes for its protection and, therefore, should not be obligated to pay safety personnel — in addition to taxes — sums to compensate then for the very injuries they could be expected to suffer because of the nature of the jobs they have. That does not seem to always apply to the ordinary street situation where an officer is injured by a person's negligence while the officer is investigating a crime, making an arrest or pursuing a suspect. In those contexts is the negligent actor the "taxpayer" who pays taxes so police can be on the streets and through tax paying can argue that his or her own negligence should excuse any liability to the individual officer that is hurt? Whatever the viability of this argument in the landowner premises liability context, how is it relevant or fair when police activity not involving entry on premises is involved?
In any event, the argument really goes too far. If "firefighters and police officers must be held to assume the risks that are to be expected in encountering the hazards and risks of their job." Id. at p. 618, quoting from Rosa v. Dunkin Donuts, 583 A.2d 1129 (NJ, 1991) why should they not expect to encounter intentional and reckless acts? As Furstein
said earlier, the very nature of this work is to confront danger, they are trained to deal with dangerous but inevitable situations. Id., p. 618. Indeed, some jurisdictions hold in premises liability cases that the rule bars suit when a firefighter is injured due to the willful and wanton misconduct of an owner in the maintenance of a building. 62 Am.Jur.2d § 433 at p. 738; Luetje v. Corsini, 466 N.E.2d 1304 (Ill.) This court, however, is of the opinion that not allowing officers to sue someone who intentionally injures them is unacceptable in a civilized community. But this discussion only illustrates that the problem of putting an analytical brake on the Firefighter's Rule especially in non-premises liability cases given the reasons advanced for it.
In any event, the final argument made by the Furstein court is that officers are already compensated by pay and workers' compensation benefits — they often receive special benefits. This argument is analogous the notion that to impose liability in the premises liability context on the landowner would impose double liability — in taxes and tort. See 218 Conn. p. 618-20. This rationale would apply to police officers in the case of non-premise liability injury given the fact that they do receive the benefits just mentioned. But it is not a particularly CT Page 9272 powerful argument for barring tort liability since why should the negligent wrongdoer in a case not involving premises liability be able to rely on payments made by the general taxpaying public. Also cities and the state could intervene in police officers' negligence actions to recoup any benefits that are paid out at least as regards workers' compensation.
It should not matter that the safety officer receives higher salary or workers' compensation benefits than other workers. This is probably particularly necessary for police officers injured in the streets since many of those that injure them may not have the resources or insurance to compensate the officers for their injury. There is no indication that the court is aware of to indicate that when governmental authorities decided to give these added benefits they intended to let negligent tortfeasors off the hook. Besides why shouldn't the "public" be entitled to intervene in the officer's suit to recoup some of the tax money paid out by that class of non-negligent tax payers who had nothing to do with injuring the officer.[1] The court does not believe Furstein compels that the Firefighter's Rule be applied to bar a claim such as that made here of a police officer injured in a non-premises liability situation. The motion for summary judgment is denied.
Corradino, J.
 ADDENDUM
In the interest of completeness one further matter should be discussed although it is not required in light of the court's decision. The defendant, in addition to arguing that the Firefighter's Rule should apply, also argued that if the rule were held to apply here a recognized exception to the application of that rule should not be found in this case so as to permit the cause of action.
The court will repeat much of the discussion set forth in Levandoski
where the court discussed a well-recognized exception to the rule. If a negligent party violates a safety statute and that violation results in injury to the officer the Firefighter's Rule is said not to bar recovery. The statute must have been passed to protect the safety of the officer and if so recovery should not be barred because by passing such a CT Page 9273 statute "the legislature has established a public policy which courts should promote in negligence actions." Walters v. Sloan, 571 P.2d 609,613 (Cal. 1977).
There, an officer went to a noisy party, disorder had developed. The officer tried to arrest a minor for being drunk in public and was attacked. The attack was the proximate result of the homeowners serving alcohol to minors. The officer sued the adult homeowner for negligence. The court applied the Firefighter's Rule to bar suit. The court rejected the plaintiff's reliance on the violation of the statute which made it an offense to serve alcohol to minors to argue against application of the Firefighter's Rule. The court rejected the argument saying at571 P.2d, p. 613:
 "Ordinarily, a criminal statute is enacted not to protect policemen from injuries while investigating or terminating the prohibited conduct but rather to protect the public. Enforcement of any criminal statute causes policemen to confront persons violating the statute, thereby imposing a confrontation and risk to the officer where none existed before. An officer called to enforce a criminal statute is thus not one of the class of persons for whose protection the criminal statute is adopted."
The California court reached a similar result in Hubbard v. Boelt,620 P.2d 156 (Cal. 1980). There, an officer using radar equipment ascertained that the defendant was driving over the speed limit and tried to pull him over — the defendant accelerated to 100 miles per hour to avoid arrest and the officer was injured during the pursuit. The court rejected the officer's argument that the rule should not apply because the defendant violated statutory provisions "designed to protect persons in plaintiff's class." Id. at p. 159. The court disagreed. The motor vehicle statute referred to made it a crime to disregard an officer's siren and red light and to flee or attempt to elude pursuit. One section of the penal code at issue proscribed "willful resistance, delay or obstruction of a police officer" and another section forbade use of force or weapons to resist arrest. As to the motor vehicle code section, the court said it was designed to reduce the hazard presented to the public high speed chases. In what might be regarded as a remarkable display of devotion to the enforcement of the Firefighter's Rule and the rights of tortfeasors, the court said:
 "The resistance/obstruction and force/weapon statutes may have been enacted to assist the officer in making arrests and performing other official functions but it CT Page 9274 is unlikely that these provisions were intended to protect the officer from injuries received from traffic accidents. Thus, we cannot conclude that enforcement of the fireman's rule in the present case would be contrary to any public policy expressed in the statutory provisions cited by plaintiff."
The court does not necessarily agree with that remarkable exercise in logic but in any event, our resisting arrest statute is differently worded. Section 53-167 (a) of the General Statutes makes it a crime to interfere with an officer and states that: "A person is guilty of interfering with an officer when (that person) obstructs, resists, hinders or endangers any peace officer . . . in the performance of the officer's duties." (Emphasis added.)
Here, Mr. Tucci's actions in speeding away from the officers at a high rate of speed and engaging them in a pursuit begun by the troopers to protect the public in fact interfered with hindered and obstructed the officers in the performance of their duties to ensure safety on our highways and did endanger the officers. But our statute requires something more. it has been held that our interference statute applies only to actions which are intended to interfere with the performance of the officer's duty. State v. Anonymous, 34 Conn. supp. 531, 544 (1977) (Appellate Session of Superior Court, Shea, J.). The court agrees with the defendant from the documents presented to it that the defendant was an elderly diabetic operating his car while seriously ill. According to the officers he was disorientated, did not realize where he was, did not even see the officer's flashing lights or hear the siren. No claim is made in the complaint or in the plaintiff's brief that he intentionally fled the police. Although intention is often said to be a matter ill-suited to disposition by way of summary judgment here the plaintiff submitted no documents or affidavits contradicting the material submitted by the defendant indicating an absence of intent and the posture of their brief and complaint indicates this is their position. Therefore, the court does not base its ruling on a conclusion that an exception to the operation of the Firefighter's Rule has been established nor does it feel it could do so given the facts of this case.
Concerning the statutory exception argument, the defendant did not discuss Section 14-223 of the General Statutes. That statute has two subsections. Subsection (a) makes it an infraction for a person to fail to stop his vehicle upon an officer's signal. Subsection (a) states when a person is signaled to stop by siren or flashing lights and fails, he or she "shall (not) increase his (sic) speed in an attempt to escape or allude such police officer." Subsection (b) provides for a heavy fine and up to a year in jail. Both subsections by their wording seem to require intentional or knowing action by the driver, cf. analysis in State v.Anonymous (1977-5, supra. Also, subsection (a) provides for an infraction and may therefore not be considered a sufficient expression of legislative policy to override the Firefighter's Rule if it were to be extended to a situation such as presented by this case.
As to subsection (b), the reasoning of the previously discussed California case of Hubbard v. Boelt, supra, is more palatable and, therefore, acceptable because in 1982 subsection (b) was amended by the legislature so as to delete from the first sentence of that subsection the following language: "shall operate his (sic) motor vehicle in intentional or wanton disregard of such signal so as to interfere with orendanger the operation of the not police vehicle, or endanger or cause damage to property or person . . ." (emphasis added). The statutory amendment could be said to express a legislative expression of intent that the statute was aimed only at reducing the hazard presented to the public by high speed chases. CT Page 9275